UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANN ELIZABETH LAFFERTY,<br><br>        Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL (PREVIOUSLY CAROLYN W. COLVIN), Acting Commissioner of Social Security,[1]<br><br>        Defendant. | No.  1:16-CV-03051-RHW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 15 & 19. Ms. Lafferty brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit.  42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 1**

1383F. After reviewing the administrative record and briefs filed by the parties, the

Court is now fully informed. For the reasons set forth below, the Court **GRANTS**

Ms. Lafferty's Motion for Summary Judgment and **REMANDS** for additional

proceedings consistent with this order.

## I.    Jurisdiction

Ms. Lafferty protectively filed for Disability Insurance Benefits and

Supplemental Security Income on May 25, 2011. AR 19, 323-24, 331-34.  Her

alleged onset date is November 18, 2009. AR 19, 323, 331. Ms. Lafferty's

application was initially denied on November 16, 2011, AR 202-08, and on

reconsideration on March 12, 2012, AR 211-18.

A hearing with Administrative Law Judge ("ALJ") Larry Kennedy occurred

on April 23, 2013. AR 43-90. A supplemental hearing was held before the ALJ on

October 28, 2013. AR 91-106. A second supplemental hearing was held before the

ALJ on June 12, 2014. AR 107-47. On July 18, 2014, the ALJ issued a decision

finding Ms. Lafferty ineligible for disability benefits. AR 19-34. The Appeals

Council denied Ms. Lafferty's request for review on February 10, 2016, AR 1-6,

making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Lafferty timely filed the present action challenging the denial of

benefits, on April 8, 2016. ECF No. 3. Accordingly, Ms. Lafferty's claims are

properly before this Court pursuant to 42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 2**

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 3**

1  substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

2  404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

3       Step two asks whether the claimant has a severe impairment, or combination

4  of impairments, that significantly limits the claimant's physical or mental ability to

5  do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

6  impairment is one that has lasted or is expected to last for at least twelve months,

7  and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

8  416.908-09. If the claimant does not have a severe impairment, or combination of

9  impairments, the disability claim is denied, and no further evaluative steps are

10  required. Otherwise, the evaluation proceeds to the third step.

11       Step three involves a determination of whether any of the claimant's severe

12  impairments "meets or equals" one of the listed impairments acknowledged by the

13  Commissioner to be sufficiently severe as to preclude substantial gainful activity.

14  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

15  20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or

16  equals one of the listed impairments, the claimant is *per se* disabled and qualifies

17  for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the

18  fourth step.

19       Step four examines whether the claimant's residual functional capacity

20  enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) &

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 4**

416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 6**

1

## IV.    Statement of Facts

2      The facts of the case are set forth in detail in the transcript of proceedings,

3  and only briefly summarized here.  Ms. Lafferty was 38 years old at the alleged

4  date of onset. AR 32, 323, 331. She has a high school education, a bachelor's

5  degree, and certificate of training in Ultrasound Medical Assisting, and is able to

6  communicate in English. AR 32, 49, 137, 428. The ALJ found Ms. Lafferty to

7  suffer from aortic arch and valve disease, status post aortic valve replacement,

8  obesity, arthralgia, obstructive sleep apnea, periodic limb movement disorder,

9  degenerative disc disease, right shoulder acromioclavicular joint degenerative joint

10 disease/rotator cuff injury, and vertigo. AR 22. Ms. Lafferty previously worked as

11 an assistant retail manager, retail cashier, data entry clerk, department manager and

12 newspaper delivery woman. AR 32, 371.

13

## V.    The ALJ's Findings

14      The ALJ determined that Ms. Lafferty was not under a disability within the

15 meaning of the Act from November 18, 2009, her alleged date of onset.  AR 33.

16      **At step one**, the ALJ found that Ms. Lafferty had not engaged in substantial

17 gainful activity since November 18, 2009 (citing 20 C.F.R. §§ 404.1571 *et seq.* &

18 416.971 *et seq.*). AR 22.

19      **At step two**, the ALJ found Ms. Lafferty had the following severe

20 impairments: aortic arch and valve disease, status post aortic valve replacement,

obesity, arthralgia, obstructive sleep apnea, periodic limb movement disorder,

degenerative disc disease, right shoulder acromioclavicular joint degenerative joint

disease/rotator cuff injury, and vertigo (citing 20 C.F.R. §§ 404.1520(c) &

416.920(c)). AR 22.

At **step three**, the ALJ found that Ms. Lafferty did not have an impairment

or combination of impairments that meets or medically equals the severity of one

of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 22-23.

At **step four**, the ALJ found Ms. Lafferty had the residual functional

capacity to perform sedentary work. She can occasionally reach overhead (above

shoulder level). She can frequently reach below shoulder level; she can frequently

handle and finger. She can never climb ramps, stairs, ladders, ropes, and scaffolds.

She can never stoop, kneel, crouch, or crawl. She must avoid concentrated

exposure to extreme heat, vibrations, and hazards. She must avoid moderate

exposure to unprotected moving parts and unprotected moving blades. She must

avoid concentrated exposure to industrial types of fumes, odors, and gases, but is

able to tolerate dust and odors that ordinarily exist in most buildings or office

settings. AR 23-32.

The ALJ determined that Ms. Lafferty is unable to perform her past relevant

work. AR 32.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 8**

At **step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 33.

## VI.    Issues for Review

Ms. Lafferty argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly evaluating and weighing the medical source opinions of Roger Vielbig, M.D., Bill Powell, D.O., Mary Pellicer, M.D., and Subramaniam Krishnamurthi, M.D.; and (4) improperly discrediting Ms. Lafferty's subjective complaint testimony.

## VII.   Discussion

**A. The ALJ Improperly Weighed Some of the Medical Opinion Evidence.**

**1.  Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2.  Dr. Vielbig.

Dr. Roger Vielbig, M.D., has been Ms. Lafferty's treating cardiologists since February 2009, immediately following her sternotomies. AR 733-73, 870-93, 959-77, 980-94, 1019-24, 1055-58. Dr. Vielbig opined that Ms. Lafferty could not lift, bend, or reach for extended periods of time and needed cardiac rehabilitation, she could not work any hours and was unable to lift at least two pounds or to stand or

1    walk. AR 895-96. He also opined that Ms. Lafferty would miss four or more days

2    of work per month due to chronic pain syndrome and a probably separated sternum

3    since January 2011. AR 978-79. The opinion of Dr. Vielbig regarding Ms.

4    Lafferty's limitations was contradicted at the June 12, 2014 hearing by one non-

5    examining doctor, Dr. Subramaniam Krishnamurthi, M.D. AR 122-34.

6         While the ALJ did not completely discount Dr. Vielbig's opinion, it was

7    afforded little weight. AR 30. The ALJ stated that little weight was given because

8    the ALJ determined Dr. Vielbig's opinion appeared to be based primarily on Ms.

9    Lafferty's subjective reports rather than the objective evidence. AR 30-31.

10   Additionally, the ALJ noted Dr. Vielbig's objective findings in his treatment notes

11   were generally normal with few abnormalities. AR 31. As an example, the ALJ

12   cited treatment records showing normal gait, no edema, and normal rhythm. AR

13   31, 874, 880, 882.

14        "Because treating physicians are employed to cure and have a greater

15   opportunity to know and observe the patient as an individual, their opinions are

16   given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80

17   F.3d 1273, 1285 (9th Cir. 1996). But an ALJ may discount the opinion of a

18   medical source that is based "'to a large extent' on an applicant's self-reports and

19   not on clinical evidence" if the ALJ properly finds the applicant to be not credible.

20   *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 11**

1    *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). "However, when an opinion is not

2    more heavily based on a patient's self-reports than on clinical observations, there is

3    no evidentiary basis for rejecting that opinion." *Ghanim*, 763 F.3d at 1162.

4          Here, the ALJ stated that it appears Dr. Vielbig's opinion is based on Ms.

5    Lafferty's subjective complaints and reported pain and limitations rather than the

6    objective evidence. AR 30-31. The ALJ noted at the hearing that comments in Dr.

7    Vielbig's reports, under the headings of ROS or review of symptoms, are a record

8    of what the patient is telling the doctor. AR 130. In this case, a record of Ms.

9    Lafferty's complaints of chest pain. *Id*. However, the ALJ makes no note of the

10   significant amount of supporting objective evidence in the treatment and

11   examination records. Dr. Vielbig's records include numerous physical

12   examinations that consistently support his determination that Ms. Lafferty suffers

13   from an unstable sternum, thus leading him to the assignment of certain

14   limitations. AR 751, 757, 968, 986, 991, 1022, 1057. Found under the headings of

15   "exam" and "problem list," Dr. Vielbig's notes reflect multiple objective

16   examinations performed by Dr. Vielbig, documenting an "exquisitely tender"

17   sternal area, clavicles, and shoulders, as well as movement of

18   Ms. Lafferty's sternum with pressure. *Id*.  These objective findings directly support

19   Dr. Vielbig's conclusion that Ms. Lafferty has an unstable sternum resulting in

20   significant chest and shoulder pain. AR 978-79.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 12**

1    Rather than being based primarily on Ms. Lafferty's subjective complaints,

2    the record demonstrates that Dr. Vielbig's opinions rely upon his own objective

3    observations, diagnoses, and prescriptions. Substantial evidence does not support

4    the ALJ's finding that those opinions are based primarily on subjective complaints.

5        Additionally, in rejecting Dr. Vielbig's treating opinions, the ALJ noted that

6    Ms. Lafferty exhibited "normal gait, no edema, and normal rhythm." AR 31.

7    However, this determination does not take into account, or contradict, Dr.

8    Vielbig's conclusion that Ms. Lafferty's unstable sternum and chronic chest and

9    shoulder pain severely limit her ability to work. Furthermore, this brief statement

10   regarding a specific section of the treatment records, is far from the detailed and

11   thorough summary of the facts and conflicting clinical evidence required to meet

12   the "specific and legitimate" standard for rejecting a treating doctors' opinion.

13   *Magallanes*, 881 F.2d at 751.

14       The ALJ failed to properly consider Dr. Vielbig's opinion. This error is not

15   harmless because it cannot be considered inconsequential to the determination of

16   disability. *Molina*, 674 F.3d at 1115.

17   **3.  Dr. Powell.**

18       Dr. Bill Powell, D.O., has been Ms. Lafferty's treating primary care

19   physician since her surgeries. AR 71-72, 830-56, 928-45, 1000-11, 1029-38. In

20   August 2012, Dr. Powell opined that Ms. Lafferty could not bend or lift; could lift

1    less than five-to-ten pounds; could sit for 20-to-30 minutes, should minimize her

2    reaching and repetitive motions; could only work one to ten hours per week; and

3    needed to move frequently. AR 898-99. The ALJ noted that at the examination that

4    accompanied the opinion, Ms. Lafferty reported her symptoms were improving.

5    AR 31, 935. Yet in August 2013, Dr. Powell opined that Ms. Lafferty was severely

6    limited, meaning unable to lift at least two pounds or unable to stand or walk. AR

7    494. Dr. Powell's opinion is contradicted by the later non-examining doctor, Dr.

8    Subramaniam Krishnamurthi, M.D. AR 122-34.

9        The ALJ did not completely discount Dr. Powell's opinion, but it was

10   afforded little weight. AR 31. The ALJ stated that Dr. Powell's opinion is not

11   consistent with Ms. Lafferty's own reported level of activity and is not consistent

12   with the objective evidence in the record. *Id.*

13       The ALJ reasoned that Dr. Powell's opinions are inconsistent with Ms.

14   Lafferty's daily activities, specifically, that she was feeding and watering her

15   horses through at least December 2013, and she continued to provide some level of

16   care for her horses and chickens. *Id.* She also cared for her daughter including

17   preparing meals, taking her to school, and playing with her. *Id.* "Such a conflict

18   may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162

19   (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th

20   Cir.1999)). The record is replete with support that Ms. Lafferty is not as limited as

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 14**

Dr. Powell suggests. AR 54-56, 140-142, 416-18, 438. As noted by the ALJ, the record also demonstrates that Ms. Lafferty must take rests when participating in her activities and she has gotten help from family members. AR 54-67, 70-71, 141-42, 416, 422, 438-39. However, Ms. Lafferty's activities still contradict Dr. Powell's extreme opinion that Ms. Lafferty is so limited she cannot lift at least two pounds or is totally unable to stand or walk.

In assigning little weight to Dr. Powell's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the ALJ did not err in his consideration of Dr. Powell's opinion.

### 4. Dr. Pellicer.

Dr. Mary Pellicer, M.D., performed a consultative examination in October 2011. AR 817-24. Dr. Pellicer reviewed Ms. Lafferty's medical records and performed a physical examination, and concluded that Ms. Lafferty can stand or walk for less than two hours and sit for four hours in an eight-hour workday and that she cannot lift or carry, and that she cannot bend or squat. *Id*. Dr. Powell's opinion is contradicted by later non-examining doctors, Dr. Subramaniam Krishnamurthi, M.D., and Dr. Dennis Koukol, M.D. AR 122-34, 184-96.

The ALJ assigned little weight to Dr. Pellicer's opinion. AR 31. The ALJ afforded Dr. Pellicer's opinion little weight because her opinion appeared to stem

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 15**

predominately from Ms. Lafferty's report of symptoms rather than the objective evidence. AR 31. The ALJ noted that although the imaging performed as part of the consultative examination showed only mild findings, Dr. Pellicer found that Ms. Lafferty could not even perform sedentary work. *Id*. Additionally, Dr. Pellicer opined that Ms. Lafferty had limitations in sitting that were inconsistent with the reasons she provided for the limitations. *Id*. As with Dr. Powell, the ALJ also found Ms. Lafferty's admitted activities of daily living were inconsistent with Dr. Pellicer's opinion. *Id*. Activities such as preparing meals, grocery shopping, animal care, and caring for her young daughter were inconsistent with Dr. Pellicer's finding that Ms. Lafferty could not lift or carry anything. *Id*. Lastly, the ALJ found the opinion inconsistent with the full record, including Dr. Krishnamurthi's opinion, which had the benefit of the entire longitudinal record. AR 31, 817-24.

In assigning little weight to Dr. Pellicer's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the ALJ did not err in his consideration of Dr. Pellicer's opinion.

### 5.  Dr. Krishnamurthi.

Dr. Subramaniam Krishnamurthi, M.D., testified as a medical expert at the June 12, 2014 hearing, that Ms. Lafferty had a normal ejection fraction and that following the valve replacement surgery her heart condition had improved and

1    stabilized. AR 116-19. He opined the Ms. Lafferty could lift 20 pounds

2    occasionally and ten pounds frequently, could stand/walk for four hours in an

3    eight-hour workday, had no limitations on sitting, could frequently use her hands,

4    bend, crouch, stoop, and crawl, and occasionally climb. AR 121.

5        Ms. Lafferty contends the ALJ erred in affording Dr. Krishnamurthi's

6    opinion significant weight. AR 30. The ALJ stated that Dr. Krishnamurthi had the

7    opportunity to review all of Ms. Lafferty's medical records, and his opinion was

8    consistent with the objective evidence in the record. Further, Dr. Krishnamurthi

9    stated that he determined the objective record was not consistent with the degree of

10   limitations alleged by Ms. Lafferty and opined by Dr. Vielbig. *Id*. The ALJ noted

11   that Dr. Krishnamurthi found that no objective evidence acceptable to him, such as

12   an x-ray, that would support subjective complaints of an unstable sternum. AR 30,

13   123-30.

14       The ALJ notes that Dr. Krishnamurthi was asked about certain notations the

15   ALJ pointed to in the record under the headings of review of symptoms and history

16   of present illness, regarding an unstable sternum, and Dr. Krishnamurthi testified

17   that these notations reflected Ms. Lafferty's subjective reports. AR 30, 130.

18   However, Dr. Krishnamurthi and the ALJ ignore the numerous objective

19   examination records and notations. The record includes Dr. Powell's findings of

20   nonunion of the sternum following the sternotomy in August and October of 2013.

1    AR 1002, 1017. Furthermore, the record is replete with treatment notes detailing

2    the objective findings of Dr. Vielbig's and Dr. Powell's physical examinations

3    finding an exquisitely tender sternal area and movement of the sternum with

4    pressure. AR 686, 702, 751, 757, 831, 841, 967-68, 986, 991, 1022, 1033, 1057.

5        Dr. Krishnamurthi inaccurately portrayed the medical record, disregarding

6    Dr. Vielbig's and Dr. Powell's diagnoses of unstable sternum and numerous

7    physical examinations in support of those diagnoses. Nevertheless, the ALJ

8    accorded "significant weight" to Dr. Krishnamurthi's initial opinion, while

9    affording little weight to the opinions of treating physicians Dr. Vielbig and Dr.

10   Powell. In so doing, the ALJ erred. This error is not harmless because it cannot be

11   considered inconsequential to the determination of disability. *Molina*, 674 F.3d at

12   1115.

13   **B. The ALJ Properly Discounted Ms. Lafferty's Credibility.**

14       An ALJ engages in a two-step analysis to determine whether a claimant's

15   testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

16   F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

17   medical evidence of an underlying impairment or impairments that could

18   reasonably be expected to produce some degree of the symptoms alleged. *Id.*

19   Second, if the claimant meets this threshold, and there is no affirmative evidence

20   suggesting malingering, "the ALJ can reject the claimant's testimony about the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 18**

severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Ms. Lafferty alleges; however, the ALJ determined that Ms. Lafferty's statements regarding intensity, persistence, and limiting effects of the symptoms not entirely credible. AR 25.

### 1. Ms. Lafferty's daily activities.

The ALJ noted numerous activities of daily living that are inconsistent with Ms. Lafferty's allegations of her level of impairment. The ALJ noted that Ms. Lafferty is the primary caretaker for her young daughter. AR 29. She prepared meals, bathed and dressed the daughter, and got her to school. *Id*. Ms. Lafferty

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 19**

reported that her typical day included watching television, taking care of her daughter, taking a walk, doing some chores, fixing meals, and spending time with her family. *Id*. She was able to do some chores like preparing simple meals, doing dishes, and some grocery shopping. *Id*. Ms. Lafferty stated that her hobbies included fishing, watching movies, and playing card games. AR 29, 818. The ALJ found that Ms. Lafferty's ability to perform those activities was consistent with the ability to engage in work activity within the limited range of sedentary exertion work he assessed in her RFC. AR 29.

The ALJ further found that the record reflected activities that demonstrated Ms. Lafferty was not as limited as she alleged. *Id*. The ALJ noted that Ms. Lafferty took her daughter fishing in June 2011. AR 29, 873. She also did yard work. AR 29, 774. In September 2013, she reported she was physically active and had four horses and thirty chickens that required daily attention. AR 29, 1021. In April 2014, she reported she was sore because she was carrying water to her pump going out, which the ALJ noted directly contradicted her testimony that she could only lift or carry a few pounds. AR 29, 1050. The ALJ noted Ms. Lafferty had been able to help care for her horses and chickens, that she fed and watered them and appeared to have done so throughout the relevant period. AR 29. The ALJ noted that Ms. Lafferty needs breaks and help with some of the activities in which she is engaged. AR 24, 29.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND** ~ 20

1    The Court does not find the ALJ erred when assessing Ms. Lafferty's

2    credibility because her activities of daily living are inconsistent with her alleged

3    impairments.

4    **2.  Inconsistency with the medical findings.**

5    The ALJ noted that the medical records do indicate that Ms. Lafferty

6    suffered symptoms of her impairments; however, the ALJ asserted that the overall

7    record does not support her level of alleged disability. AR 25-28. The ALJ

8    provided a very detailed description of inconsistency with the medical findings and

9    inconsistent statements when determining that the medical evidence did not

10   support the degree of limitations Ms. Lafferty alleged. AR 25-28, 32.

11   The ALJ found the record established that Ms. Lafferty had an aortic

12   aneurysm, had surgery to repair it, and improved after her surgery. AR 25. The

13   ALJ noted Ms. Lafferty alleged many disabling limitations post-surgery, including

14   that she gets worn out from chores and showering and has to sit down after five or

15   ten minutes, that her hands and arms get too fatigued to do even sedentary work,

16   that her leg and arm muscles are weak, that her sternum is unstable and will pop

17   until she cannot move, and that she has bad pain once a week or more that require

18   her to lie down or rest most of the day. AR 24. The ALJ recognized that Ms.

19   Lafferty had limitations from her impairments and limited her to an RFC for a

20   reduced range of sedentary work. AR 23, 25. However, the ALJ found that Ms.

Lafferty had not been totally disabled and not precluded from all work activity. AR 25.

The ALJ noted Ms. Lafferty had two surgeries in January 2010. AR 25, 543, 602. After which, Ms. Lafferty had an echocardiogram that showed normal ejection fraction. AR 25, 652-53. The record states that Ms. Lafferty was doing well and her pain was controlled with medication. AR 25, 890. Ms. Lafferty stopped taking narcotic pain medication in April 2010. AR 762-64. The ALJ noted she reported some double vision and dizziness but had regular rhythm, normal pedal pulses, and she could exercise normally. AR 25, 762-64.

The ALJ summarized the medical evidence for 2010, which included some allegations of pain and fatigue but also descriptions of a relatively active lifestyle. AR 25-26. In August 2010, Ms. Lafferty reported aches and pains in her chest, fatigue, and dyspnea; she also reported she walked 30 to 45 minutes, did chores around the house, and took care of her toddler. AR 25, 756. In April 2011, Ms. Lafferty went to the emergency room with chest pain and burning after recently moving items for her mother. AR 25, 686. On examination, Ms. Lafferty had full active range of motion and no tenderness. *Id*. In July 2011, a stress test showed normal results, and Ms. Lafferty was referred to cardiac rehabilitation for conditioning and strengthening. AR 26, 742-43. At rehabilitation she exercised without difficulty. AR 26, 801. Ms. Lafferty again went to the emergency room in

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 22**

1  September 2011, this time after working in her yard for an hour; she had normal

2  ejection fraction and was discharged to follow up with her treatment providers. AR

3  26, 774.

4    The ALJ also described in detail the consultative examination performed by

5  Dr. Pellicer on October 27, 2011. AR 26, 817-24. The ALJ noted that although Ms.

6  Lafferty reported to the agency that she could not do things like opening a jar, but

7  Dr. Pellicer noted Ms. Lafferty's fine motor manipulation was intact and she could

8  open a jar and manipulate small objects. AR 26, 439, 821. Ms. Lafferty had

9  decreased range of motion in her back, shoulder, and neck but good strength in all

10  muscle groups. AR 26, 819-21. Imaging showed mild degenerative changes in the

11  spine. AR 26, 814. However, at a subsequent examination with Dr. Powell in April

12  2012, Ms. Lafferty had full range of motion despite tenderness in her right

13  shoulder and pain with motion. AR 27, 940. Ms. Lafferty reported elbow pain but

14  her examination was generally normal, which the ALJ found demonstrated that

15  Ms. Lafferty was not as limited as she alleged. AR 27, 944-45.

16    The ALJ considered additional evidence from 2012 that failed to corroborate

17  the extent of Ms. Lafferty's alleged limitations: a cerebrovascular study and

18  cardiac imaging in April 2012, an EKG in February 2013, and additional cardiac

19  imaging in April 2013. AR 27, 965-66, 929, 980. These tests demonstrated that

20  Ms. Lafferty was stable from the prior tests. AR 27. The ALJ noted that in

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ORDER OF REMAND ~ 23**

September 2013, Dr. Vielbig encouraged Ms. Lafferty to be as active as possible. AR 28, 1023. The ALJ acknowledged that in December 2013, imaging of Ms. Lafferty's right shoulder showed mild joint degenerative changes and a small partial thickness tear. AR 28, 1025-26. Examination also showed reduced muscle strength in that shoulder. AR 28, 1033. The ALJ accordingly found Ms. Lafferty could only occasionally reach above shoulder level and addressed the limitation in her RFC. AR 23.

Thus, the Court does not find the ALJ erred when assessing Ms. Lafferty's credibility because her reported level of disabling impairments are inconsistent with the record as a whole.

### C.  Remedy.

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

On remand, the ALJ shall consider the opinion of Dr. Vielbig in accordance with the analysis of Dr. Vielbig's opinion in this Order. The ALJ shall consider the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 24**

opinion of Dr. Krishnamurthi in accordance with the analysis of Dr.

Krishnamurthi's opinion in this Order. The ALJ will also consider the objective

evidence related to Ms. Lafferty's unstable sternum. Once considering these

opinions in accordance with the analysis of these opinions in this Order, the ALJ

shall recalculate the residual functional capacity, considering all impairments, and

then evaluate, based on this updated residual functional capacity, Ms. Lafferty's

ability to perform work available in the national economy.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is not supported by substantial evidence and contains legal error.

Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 19,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

///

///

///

///

///

///

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 25**

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 13th day of February, 2017.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND ~ 26**